# ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HUDSON RIVERKEEPER FUND, INC.  :

               Plaintiff,  :

         -and-  :

VILLAGE OF HASTINGS-ON-HUDSON,  :

         Plaintiff-Intervenor,  :

         v.  :        94 Civ. 2741 (WCC)

ATLANTIC RICHFIELD COMPANY,  :

       Defendant, Third-Party Plaintiff,  :

         v.  :

UNITED STATES OF AMERICA, *et al.*,  :

         Third-Party Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SETTLEMENT AGREEMENT AND CONSENT ORDER

WHEREAS, this Settlement Agreement and Consent Order ("Agreement") is made, as of the Effective Date of this Agreement, as defined in Paragraph 4 below, between Third-Party Plaintiff Atlantic Richfield Company ("AR") and Third-Party Defendants United States of America, *et al.* (the "United States"), collectively referred to as "the Parties," as defined in Paragraph 2 below;

WHEREAS, AR has brought third-party claims in this matter against the United States under the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"), and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, seeking to recover certain costs it

has allegedly incurred in response to the release or threatened release of hazardous substances at the former Anaconda Wire and Cable plant located in Hastings-on-Hudson, New York, and seeking a declaration as to the United States' liability for such costs to be incurred in the future;

WHEREAS, the Parties desire to enter into this Agreement in order to achieve a full and final resolution of any and all claims that have been or could ever be asserted by AR against the United States concerning these costs of response and to avoid the complication and expense of further litigation of such claims;

WHEREAS, the Parties agree that this Agreement is fair, reasonable, and in the public interest; and

WHEREAS, the Parties enter into this Agreement without admitting any liability arising from occurrences or transactions pertaining to the Site,

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

1.    Definitions.  Unless otherwise expressly provided herein, terms used in this Agreement that are defined in CERCLA or its implementing regulations shall have the meaning assigned to them in CERCLA or its implementing regulations.  Whenever the terms listed below are used in this Agreement, the following definitions shall apply.

   a.    "Agreement" shall mean this Settlement Agreement and Consent Order.

   b.    "Third-Party Complaint" shall mean the second amended third-party complaint filed by AR in this action on or about March 8, 2007.

2

c.      "AR" shall mean the Third-Party Plaintiff in this action, identified

in Paragraph 8 of the Third-Party Complaint, *i.e.*, Atlantic

Richfield Company, including its predecessors, successors,

assigns, affiliates, and related companies.

d.      "United States" means the Third-Party Defendants in this action,

including the United States of America and all of its departments,

agencies, and instrumentalities, their officers, directors, and

employees, and any predecessors, successors, and assigns.

e.      "Covered Matters" shall mean any and all past or future claims that

have been or could ever be asserted by AR against the United

States for any costs of response, as defined by 42 U.S.C.

§ 9601(25), incurred by AR to address releases or threatened

releases of pollutants, contaminants, or hazardous substances at or

emanating from the Site, including but not limited to PCBs.

"Covered Matters" do not include claims that AR has or may have

in the future against the United States arising out of liability to any

third party for damages or costs other than such response costs, nor

do "Covered Matters" include claims that AR has or may have in

the future against the United States with respect to natural resource

damages or claims brought against AR regarding the Site by a

Natural Resource Trustee.

f.      "Day" shall mean a calendar day.  In computing any period of time

under this Agreement, where the last day would fall on a Saturday,

Sunday, or federal holiday, the period shall run until the close of business of the next day that is not a Saturday, Sunday, or federal holiday.

g.    "Applicable Decrees" shall mean the following decrees: (1) the *Order on Consent between the New York State Department of Environmental Conservation and the Atlantic Richfield Company,* Index # W3-1000-04-05, Site #3-60-022, entered March 25, 2005, as in effect and as subsequently amended, modified, or replaced by any further administrative or judicial judgment by the New York State Department of Environmental Conservation ("NYSDEC") or any court of competent jurisdiction; (2) the *Consent Decree by and between Hudson Riverkeeper Fund Inc., the Village of Hastings-On-Hudson, and the Atlantic Richfield Company entered in this litigation on December 19, 2003,* as in effect, and as it may be subsequently amended, modified, or replaced by any further decree or order of the Court; and (3) any future administrative or judicial orders or decrees, whether or not by consent, related to the investigation or remediation of the Site, and pertaining to Covered Matters.

h.    "Including" shall mean including but not limited to.

i.    "Interest" shall mean interest accruing at the rate established for the Hazardous Substance Superfund under 26 U.S.C. § 9507.

4

j.    "Site" refers to the former Anaconda Wire & Cable Company

facility located on approximately 27 acres of land at 1 River Road,

Hastings-On-Hudson, New York, as well as the adjacent Hudson

River and its sediments.

k.    "Northern Portion of the Site" shall mean: (1) that land portion of

the Site north of a line extending in an east-west direction from the

northern shoreline of the North Boat Slip; and (2) those portions of

the Hudson River and its sediments that consist of the North Boat

Slip, the Northwest Corner Area, the Old Marina, and any Off-

Shore Areas directly west of the North Boat Slip, the Northwest

Corner Area, and the Old Marina, as those terms are defined in the

April 26, 2006 Supplemental Feasibility Study Report for Operable

Unit No. 2, NYSDEC Site #3-60-022.  The Northern Portion of the

Site is depicted by the areas shaded in red and blue in Exhibit A to

this Agreement.

l.    "PCB Response Costs" means those necessary costs of response,

as defined in 42 U.S.C. § 9601(25), including such costs incurred

pursuant to Applicable Decrees, that (1) are consistent with the

National Contingency Plan and Applicable Decrees and (2) arise

out of or in connection with any releases or threatened releases of

PCBs at or emanating from the Northern Portion of the Site,

including costs for: (A) investigation; (B) removal or remedial

actions; (C) design, operation, maintenance and monitoring of any

5

remedy; and (D) any required periodic review of conditions at the Northern Portion of the Site or remedies implemented at the Northern Portion of the Site.

m.    "Past PCB Response Costs" means PCB Response Costs paid by AR as of June 30, 2008.

n.    "Future PCB Response Costs" means PCB Response Costs paid by AR after June 30, 2008.

o.    "Natural Resource Trustee" means any person, including any federal, state, or tribal authority, that qualifies as a trustee of natural resources pursuant to 42 U.S.C. § 9607(f).

p.    "PCBs" means polychlorinated biphenyls (including any polychlorinated biphenyl congener or mixture of congeners) or any mixture of polychlorinated biphenyls with polychlorinated napthas, polychlorinated triphenyls, or carriers or solvents such as naptha or toluene. PCBs include the substances marketed commercially as Aroclor or Halowax, as reported in operational records for the Site and contract documents and other communications between the United States and Anaconda Wire and Cable Company.

2.    <u>The Parties</u>. The Parties to this Agreement are AR and the United States.

3.    <u>Application of This Agreement</u>. This Agreement applies to, is binding upon, and inures to the benefit of AR and the United States. This Agreement does not extend to or inure to the benefit of any other party, person, or entity, and nothing in this Agreement shall be construed to

6

make any person or entity not executing this Agreement a third-party beneficiary of this Agreement.

4. Effective Date. The Effective Date of this Agreement shall be the date this Agreement is approved by the Court.

5. Release and Covenant Not to Sue by AR. Upon approval and entry of this Agreement by the Court, and receipt by AR of the payment provided for in Paragraph 9, AR shall forever release, discharge, and covenant not to assert (by way of commencing an administrative or judicial action, the joinder of the United States in any such existing action, or in any other fashion) any and all claims of any kind whatsoever, known or unknown, at law or in equity, that AR may have or hereafter have, concerning Covered Matters, including claims under CERCLA sections 107 and 113 and claims for contractual indemnification, excepting claims for breach of this Agreement. AR's release of claims for contractual indemnification extends only to Covered Matters and AR specifically reserves its rights to pursue claims for contractual indemnification for matters that fall outside the scope of Covered Matters. AR further agrees that it shall not seek or accept reimbursement, and hereby certifies that it has not been reimbursed, for any costs related to Covered Matters, by means of any past, existing, or future contracts or other agreements with, or grants or subsidies funded by or received from, the United States. If AR becomes aware of or is offered any such reimbursement, it shall promptly give notice of the terms of this Agreement to the individual, agency, or other entity that is offering or has

7

provided such reimbursement, and it shall simultaneously notify the

United States at the following address:

> Chief, Environmental Section
> U.S. Attorney's Office, Southern District of New York
> Civil Division
> 86 Chambers Street, 3rd Floor
> New York, New York 10007

6.    <u>Indemnification by AR</u>.  AR further agrees to indemnify and hold

harmless the United States against any and all past or future claims

asserted against the United States by any person concerning Covered

Matters, unless such claims arise as a result of legal actions instituted by

the United States that cause a party to assert counterclaims or third-party

claims against the United States for which indemnification is sought.  If a

claim arises for which the United States seeks indemnification, the United

States shall provide AR with timely notice of the claim, including

reasonable detail of the nature of the claim and the basis for its assertion.

AR shall have the right, but not the obligation, to participate in the defense

of any claim for which the United States seeks indemnification from AR.

The United States shall seek AR's consent, not to be unreasonably

withheld, before settling any such claim.  If AR objects to the settlement

of such a claim, the United States may tender the defense of the claim to

AR.

7. <u>Protection against Claims</u>.

    a.    The payments to be made by the United States pursuant to this Agreement represent a good faith compromise of disputed claims and a fair, reasonable, and equitable resolution of Covered Matters.

    b.    With regard to any claims against the United States for Covered Matters, the Parties agree that the United States is entitled, as of the Effective Date, to contribution protection pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f), and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the United States' liability to persons not party to this Agreement. Any rights the United States may have to obtain contribution or otherwise recover costs or damages from persons not party to this Agreement are preserved.

8. <u>Cooperation</u>. The Parties agree to join in and support, as may be appropriate, such legal proceedings as may be necessary to secure the Court's approval and entry of this Agreement and to maintain the contribution protection contemplated in this Agreement.

9. <u>Payment for PCB Response Costs</u>.

    a.    AR hereby warrants and certifies to the United States, under penalty of perjury, that: (i) as of June 30, 2008, it has expended $17,258,067.42 on costs that it believes, in good faith, constitute Past PCB Response Costs, and (ii) it has not recovered these Past PCB Response Costs from the United States or from any other

9

source, including insurers, except as otherwise provided in Paragraph 13 of this Agreement. Within fifteen (15) days after the Effective Date of this agreement, ARCO shall produce to the United States a statement of these Past PCB Response Costs, including copies of invoices, a description of the work underlying the invoices, and other documents sufficient to support the certification required by this Paragraph.

b.   Within ninety (90) days of the United States' receipt of the statement required by Paragraph 9.a, the United States shall pay $5,752,689.14 to AR, unless the United States objects to the AR's claimed Past PCB Response Costs pursuant to Paragraph 11.a. Payment shall be made pursuant to instructions given by AR, provided these instructions comply with federal and any other applicable law.

c.   Within five (5) days of receipt of the payment required by Paragraph 9.b, AR shall file a notice with the Court that payment has been received.

10.   Payments for Future PCB Response Costs.

a.   On or before March 1, 2009, and on or before March 1 of each succeeding calendar year, AR shall send the United States a statement of Future PCB Response Costs paid from July 1 through December 31 of the previous calendar year. On or before September 1, 2009, and on or before September 1 of each

succeeding calendar year, AR shall send the United States a
statement of Future PCB Response Costs paid from January 1
through June 30 of that calendar year. In no event shall AR submit
or be entitled to recover from the United States any Future PCB
Response Cost more than two years after it has been paid by AR.

b.    Each statement shall contain a certification by AR under penalty of
perjury that: (i) each claimed item qualifies as a Future PCB
Response Cost and was paid by AR; and (ii) AR has not recovered
the claimed Future PCB Response Costs from the United States or
from any other source, including insurers, except as otherwise
provided in Paragraph 13 of this Agreement.

c.    Also included with each statement shall be copies of invoices, a
description of the work underlying the invoices, and other
documents sufficient to support the certification required under
Paragraph 10.b.

d.    Within ninety (90) days of the United States' receipt of each
statement, the United States shall reimburse AR for thirty-three
and one-third percent (33.33%) of the Future PCB Response Costs
contained in the statement, unless the United States objects to the
Future Response Costs pursuant to Paragraph 11.a. Payment shall
be made pursuant to instructions given by AR, provided these
instructions comply with federal and any other applicable law.

11.     <u>Objections to PCB Response Costs.</u>

a.      The United States may object to any PCB Response Costs within sixty (60) days of the receipt of a statement for those costs.  Such objection shall be in writing and shall be sent to AR pursuant to Paragraph 14 of this Agreement.  Any such objection shall identify the contested PCB Response Cost and the basis for objection.  The United States may object to PCB Response Costs solely on the grounds that (i) AR has made an accounting error regarding the cost; (ii) AR has failed to provide adequate documentation that it paid the cost; (iii) the cost does not qualify as a PCB Response Cost; (iv) AR incurred the cost in substantial and material noncompliance with applicable laws and regulatory requirements; or (v) AR incurred the cost or prepared the statement fraudulently or in bad faith.  The United States may not object to a PCB Response Cost on the basis that the work for which PCB Response Costs were incurred could have been completed at a lower cost or by different means.  In the event of an objection, the United States shall, within the ninety (90) day period provided in Paragraph 9.b or 10.d (whichever applies), reimburse its one-third share (33.33%) of any uncontested PCB Response Costs to AR.  After the transmission of any objection pursuant to this Paragraph, the United States shall initiate the dispute resolution procedures provided in Paragraph 14.

b.      If, after payment of any PCB Response Costs, the United States determines for any of the reasons set forth in Paragraph 11.a that a PCB Response Cost for which reimbursement was made to AR pursuant to this Agreement was not properly subject to reimbursement, the United States may demand credit, with Interest, of all payments made with regard to that cost, which credit shall be applied to AR's demands for PCB Response Costs. Within sixty (60) days of receiving such a demand, AR shall credit such prior payments to the United States, with Interest from the date of the prior payments to the date of return of the credit, unless AR provides written notice contesting that demand for credit within said sixty (60) day period, in which case the dispute resolution provisions of Paragraph 14 shall take effect.  In the event that AR agrees to provide a credit to the United States but makes no claims for reimbursement exceeding the credit within one year, AR shall refund any remaining credit to the United States within ninety (90) days thereafter (with accrued Interest pursuant to this Paragraph).

c.      A determination by the United States not to object to a PCB Response Cost shall not constitute an admission by the United States that the cost is a valid PCB Response Cost within the scope of this Agreement, provided, however, that the United States shall not demand credit for or be entitled to recover any payment of a

13

PCB Response Cost more than two years after it has made said payment, except in cases of fraud or bad faith.

d.  If any payments required to be made under the Agreement are not timely made, Interest on the unpaid balance shall accrue from the date on which the payment was due.

12.  <u>Anti-Deficiency Act</u>.  Payments of PCB Response Costs by the United States are subject to the availability of funds appropriated for such purpose.  No provision of this Agreement shall be interpreted to require that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §§ 1341-42 and 1511-19, or any other applicable provision of law, provided, however, that the unavailability of appropriated funds shall not relieve the United States of its payment obligations set forth in Paragraphs 9 and 10 or its obligation to pay interest set forth in Paragraph 11.d if or when such funds are appropriated.

13.  <u>Limitation on Claims against Third Parties</u>.

a.  AR shall provide notice to the United States within fourteen (14) days if at any time it seeks recovery of PCB Response Costs from any source other than the United States or from the United States in any manner other than that provided in Paragraphs 9 and 10.

b.  Notwithstanding the foregoing, AR shall be entitled to seek to recover Past PCB Response Costs or Future PCB Response Costs or other damages from any person other than the United States that may be liable to AR as a result of acts or omissions in connection

14

with the performance of removal actions or remedial actions
related to the Site or for any other costs related to the Site that are
not Covered Matters.

14.   <u>Dispute Resolution</u>.

    a.    Any dispute with respect to the United States' obligation to
reimburse PCB Response Costs under Paragraphs 9 or 10 of this
Agreement shall in the first instance be the subject of informal
negotiations between the Parties.  The period for informal
negotiations shall last sixty (60) days from the date the United
States transmits its objection pursuant to Paragraph 11.a or AR
transmits an intention to contest a demand for credit pursuant to
Paragraph 11.b unless this period is extended by written agreement
of the Parties.  If the informal negotiations are unsuccessful, the
Parties shall notify the Court of the dispute and the need for a
resolution, either by the Court or through the use of Court-annexed
alternative dispute resolution procedures, unless the Parties agree
in writing on an alternative method of dispute resolution.

    b.    In the event informal negotiations are unsuccessful, no Party shall
submit or rely on any evidence, in any form, to resolve the
disputed PCB Response Cost that was not disclosed to the other
Party prior to the expiration of the informal negotiation period in
Paragraph 14.a, except upon a finding by the mediator or the Court
of fraud or bad faith by the party against which the evidence is to

15

be introduced.  However, nothing in this Paragraph shall preclude a Party from submitting or relying on: (i) expert testimony; (ii) factual evidence not in existence at the time of the informal negotiation period; (iii) factual evidence whose existence was not known to the Party at the time of the informal negotiation period; or (iv) evidence that is, or was at the time of the informal negotiation period, exclusively within the possession of the other Party.

c.      If a reimbursement is determined to be due pursuant to Paragraph 14.a, the United States shall pay the sum determined to be due within sixty (60) days of the resolution of the dispute (with accrued Interest pursuant to Paragraph 11.d of this Agreement).  If a credit is determined to be due pursuant to Paragraph 14.a, then the United States shall apply said credit to AR's subsequent claims for reimbursement (with accrued Interest pursuant to Paragraph 11.b of this Agreement).  In the event that AR makes no claims for reimbursement exceeding the credit within one year, AR shall refund any remaining credit to the United States (with accrued Interest pursuant to Paragraph 11.b of this Agreement).

15.    Negotiation of Cash-Out Agreement for Future PCB Response Costs.  The Parties may at any time agree to terminate the periodic reimbursements required under Paragraphs 10.a through 10.d in exchange for a single lump-sum payment by the United States to AR in an amount acceptable to

16

both Parties.  Such agreement must be made in writing and must expressly

terminate all rights and obligations of both Parties under Paragraphs 10

through 14 of this Agreement.

16.     <u>Effect of Settlement/Entry of Judgment</u>.

    a.      This Agreement was negotiated and executed by AR and the

            United States in good faith and at arms length and is a fair and

            equitable compromise of claims, which were vigorously contested.

            This Agreement shall not constitute or be construed as an

            admission of liability, an admission or denial of any factual

            allegations set out in the Third-Party Complaint, or an admission

            of violation of any law, rule, regulation, or policy by either of the

            Parties to this Agreement.

    b.      Upon approval and entry of this Agreement by the Court, this

            Agreement shall constitute a final judgment among the Parties with

            respect to the Third-Party Complaint.

17.     <u>Covenant Not to Sue by United States and Reservation</u>.  The United States

        hereby releases and covenants not to sue AR for Covered Matters.  The

        United States specifically reserves its right to assert against AR any claims

        or actions regarding the Site brought on behalf of the United States

        Environmental Protection Agency or a Natural Resource Trustee.

18.     <u>Dismissal with Prejudice of Third-Party Complaint</u>.  Upon approval and

        entry of this Agreement by the Court, all claims in the Third-Party

        Complaint shall be dismissed with prejudice.

19.  Notices.  Any notices required hereunder shall be transmitted by overnight

delivery service or electronic mail to each of the undersigned, or in such

manner as may be designated by a Party hereto in writing to the other

Party.

20.  Integration Provision.  This Agreement, including attachments, constitutes

the entire Agreement between the Parties with respect to the subjects

covered herein.  All prior discussions, drafts, and writings are specifically

superseded by this Agreement and may not be used to vary or contest the

terms of this Agreement.

21.  Representative Authority.  The individuals signing this Agreement on

behalf of the Parties hereby certify that they are authorized to bind their

respective party to this Agreement.

22.  Costs and Expenses.  The Parties shall each bear their litigation and

administrative costs and expenses, including attorneys' fees.

23.  Retention of Jurisdiction.  Notwithstanding any other provision of this

Agreement, the Court shall retain jurisdiction for the purpose of enforcing

the Parties' obligations under this Agreement and for resolving disputes in

accordance with Paragraph 14 of this Agreement.

**For Third-Party Plaintiff AR:**

ARNOLD & PORTER LLP
Attorneys for Atlantic Richfield Company

THOMAS MILCH
Nancy Milburn
Michael Daneker
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5000

**For Third-Party Defendants United States** *et al.***:**

> LEV L. DASSIN
> Acting United States Attorney
> Attorney for Third-Party Defendants
>
> SERRIN TURNER
> Assistant U.S. Attorney
> U.S. Attorney's Office
> Southern District of New York
> 86 Chambers Street, 3rd Floor
> New York, New York 10007
> (212) 637-2701

20

# EXHIBIT A

HALEY & ALDRICH
NYSDEC SITE #3-60-022
1 RIVER STREET
HASTINGS ON HUDSON, NEW YORK
EXHIBIT A:
Areas Subject to US / AR Settlement
SCALE: AS SHOWN
SEPTEMBER 2008
SCALE IN FEET
0
175
350
N
S
E
W
LEGEND
PROPERTY LINE
RAIL ROAD
EXISTING STRUCTURES
FORMER STRUCTURES
FENCE
RETAINING WALL
RIP-RAP
AREAS
OU-1 NORTH AREA
NORTH REMAINDER AREA
NORTHWEST CORNER AREA
OLD MARINA
NORTH BOAT SLIP
SOUTH AREA
SOUTH BOAT SLIP
WATER TOWER
#52
#51
#51A
#72
#72A
#22C
#22
#22A
#17
#18
#19
#79A
#57
HUDSON RIVER (NORTHWEST CORNER AREA)
HUDSON RIVER (SOUTH AREA)
G:\PROJECTS\28612\211\CAD\NAVY CASE\28612 AREA DESIGNATIONS_R1_NAVY CASE.DWG

*Conner, J*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HUDSON RIVERKEEPER FUND, INC.                    :
                                                 :
                    Plaintiff,                   :
                                                 :
          -and-                                  :
                                                 :
VILLAGE OF HASTINGS-ON-HUDSON,                   :
                                                 :
                    Plaintiff-Intervenor,        :
                                                 :
          v.                                     :          94 Civ. 2741 (WCC)
                                                 :
ATLANTIC RICHFIELD COMPANY,                      :
                                                 :
                    Defendant, Third-Party Plaintiff,   :
                                                 :
          v.                                     :
                                                 :
UNITED STATES OF AMERICA, *et al.*,              :
                                                 :
                    Third-Party Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

UPON CONSIDERATION OF THE FOREGOING, the Court hereby finds that this Agreement is fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest.  THE FOREGOING Agreement is hereby APPROVED.

The United States is entitled to, as of the date of this Order, contribution protection pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f), and any other applicable provision of federal or state law, whether by statute or common law. All claims against the United States alleged in the Third-Party Complaint are hereby dismissed with prejudice.

COPIES MAILED TO COUNSEL OF RECORD  12/19/08

There being no just reason for delay, this Court expressly directs, pursuant to Rule 54(b), Fed. R. Civ. P., ENTRY OF FINAL JUDGMENT in accordance with the terms of this Agreement.  AR and the United States shall each bear their own costs and expenses, including attorneys' fees, in this case.

SIGNED and ENTERED this 19th day of December 20 08.

SO ORDERED.

_____

UNITED STATES DISTRICT JUDGE